UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHIFRA WINEHOUSE,                                              16-cv-3110 (FB)

                              Plaintiff,

              - against -

GC SERVICES LIMITED PARTNERSHIP,

                              Defendant.

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

The FDCPA requires that debt collectors identify themselves as such in all messages they leave for consumers.  This requirement was enacted to prevent consumers from being tricked into communicating with debt collectors regarding a debt. Congress determined that a debt collector must include in all its communications its status as a debt collector. With this specific disclosure requirement, Congress determined that the failure to make this disclosure is misleading and harmful to consumers. As a matter of pattern and practice, defendant leaves anonymous telephone messages for consumers as part of a harmful scheme designed to trick consumers into calling back and being forced to communicate with the debt collector.  Defendant has left such messages for plaintiff and has also been sued numerous times for this violation. The courts that have addressed defendant's practice in those cases have continuously found Defendant to be in violation of the FDCPA.

### THE FAIR DEBT COLLECTION PRACTICES ACT

Plaintiff presumes the Court's familiarity with the FDCPA as the undersigned has appeared before the Court quite a number of times concerning various violations of the said statute.  The

1

FDCPA was enacted to prevent predatory debt collection practices such as anonymous phone calls. The case at bar deals with the debt collector's use of abusive anonymous phone calls in violation of 1692e(11) of the FDCPA.  The FDCPA is unique in the sense that it was specifically enacted to guard against the _harms_ of predatory debt collection practices. With this regulation, the FDCPA confers upon the Plaintiff the right to be free from abusive anonymous phone calls.  Requiring debt collectors to provide enough information on a message so as not to mislead the recipient about the purpose of the call was solely enacted to prevent debt collectors from using unfair, abusive and harmful collection techniques to entrap debtors into non-consensual communications.

By enacting 1692e(11), Congress has specifically declared the prohibited activity, namely failing to make the necessary disclosures, as inherently misleading and harmful. Congress found that through prohibiting debt collectors from leaving anonymous messages they would be eliminating a very real harm, because allowing a debt collector to leave anonymous messages results in harassment, fear, intimidation and exploitation.  In addition, most consumers would be tricked into calling back and would be forced to communicate with the debt collector which is an abusive practice since consumers prefer to choose when to communicate with debt collectors. Furthermore, some consumers prefer written contact or to have an attorney or other representative engage in discussions with the debt collector on the consumer's behalf.

Congress requires a debt collector to identify itself as such since Congress sought to prevent consumers from being tricked into communicating with debt collectors regarding a debt. Debt collectors have several forms of non-abusive communication available to them in their efforts to collect a debt, including live conversation over the telephone when done voluntarily on behalf of the debtor, use of the mail or even voluntary in person communication.

**THE COURT HAS JURISDICTION BASED UPON *SPOKEO* AND ITS PROGENY**

"[B]oth history and the judgment of Congress," *Spokeo*, 136 S. Ct. at 1549, confirm that the plaintiff's injury is sufficiently concrete. It is closely related to the injury arising from deceit, regardless of effect, that was cognizable under colonial-era American law that descends from the Statute of Westminster of 1275, *Amalfitano v. Rosenberg*, 903 N.E.2d 265, 267–68 (N.Y. 2009) — a harm, in other words, "that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549.

In addition, as a result of GC's misrepresentations, consumers like the plaintiff face the risk of tangible harms—harms that Congress, with its "well positioned . . . judgment," meant to "elevat[e] to the status of legally cognizable injuries," *id.*, when it enacted the FDCPA. *See* 15 U.S.C. § 1692(a). This case is illustrative: By misrepresenting its identity, GC created a substantial risk that consumers like the plaintiff would suffer real-world harm. GC's anonymous telephone messages in effect, trick consumers into calling back and being forced to communicate with the debt collector.

These anonymous messages mislead consumers into thinking that the message could reasonably pertain to a host of issues - including family or medical matters - which are viewed by consumers as much more pressing, than a debt owed. The purpose of these messages is to be vague enough to deceptively provoke the recipient to return the calls in haste.  Leaving a message that injuriously entices a consumer to communicate with a debt collector when he or she is caught off guard, is precisely the kind of harm and abuse the FDCPA intended to prevent.  For this reason as well, plaintiff has standing.

The Supreme Court in *Spokeo* actually reinforces that in an FDCPA case, it is the mere risk of harm such as deception or the failure to obtain information, subject to disclosure under the

3

FDCPA, which constitutes sufficient distinct injury to provide standing to sue. *Spokeo,* 136 S. Ct. at 1549–50.

Spokeo reinforces most FDCPA claims, since the FDCPA was designed specifically to stem all debt collection harms. *Hart v. FCI Lender Servs.*, 797 F.3d 219, 226 (2d Cir. 2015) ("[I]n passing the FDCPA, Congress identified abusive collection attempts as [the] primary motivation for the Act's passage.")

*Spokeo* dealt with the Fair Credit Reporting Act of 1970 (FCRA or Act), 15 U. S. C. §1681 et seq., in which Congress required consumer reporting agencies, whenever preparing a consumer report, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Yet, the Supreme Court in *dicta*, found that a bare procedural violation - that contains no element or risk of harm - cannot satisfy the injury-in-fact requirement of Article III.

The Supreme Court did *not* find that plaintiff alleged a bare procedural violation that contains no element or risk of harm.  Additionally, the Supreme Court did not find that alleging a bare procedural violation would result in a lack of the injury-in-fact requirement of Article III. Rather, the Supreme Court found that in order for the standing analysis to be complete, a court must address whether the particular procedural violations alleged entail a risk of harm sufficient to meet the concreteness requirement.

The Ninth Circuit found that Robins adequately alleged an injury in fact.  Justice Alito, writing on behalf of the majority, noted that the Court took "no position on the correctness of the Ninth Circuit's ultimate conclusion." *Spokeo,* 136 S. Ct. at 1550–51.  The Ninth Circuit's ruling was vacated and remanded for further analysis as to if and how Robin's violation of the FCRA contained a risk of harm.

4

*Spokeo*, - reaffirming *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989) a case where the plaintiff's failure to obtain information subject to disclosure under the FACA was considered sufficient injury to provide standing to sue - found that the violation of a procedural right granted by statute is sufficient to constitute injury in fact.

*Spokeo* found a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified.  *Spokeo* also cited to *Federal Election Comm'n v. Akins,* 524 U. S. 11, 20-25, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III).

Congress created the FDCPA since it found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," 15 U.S.C. § 1692(a). Congress enacted the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA" or "Act"), "to eliminate [such] practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."

> "Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To further these ends, the FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001). As is relevant here, section 1692e of the FDCPA provides generally that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In addition, "[w]ithout limiting the general application of the foregoing," section 1692e proscribes sixteen specific debt collection practices." *Vincent v. Money Store*, 736 F.3d 88, 96 (2d Cir. 2013)

*Spokeo* found that a plaintiff's failure to obtain information subject to disclosure under a federal act was considered sufficient injury to provide standing to sue since in such a case the

violation of a procedural right granted by the statute is sufficient to constitute injury, the same rings true when dealing with the FDCPA.

A plaintiff alleging an FDCPA violation, need not allege any additional harm beyond the one Congress has identified such as the statutory right debtors have to be recipients of debt collection that is entirely free of any false, deceptive, or misleading representations. Additionally, the mere fact that a debt collector fails to provide a debtor with the mandatory disclosures that Congress instructed debt collectors to provide is a sufficient injury in fact to satisfy Article III. *In Janetos v. Fulton Friedman & Gullace, LLP*, No. 15-1859, 2016 U.S. App. LEXIS 6361, at *3 (7th Cir. Apr. 7, 2016) the court found:

> "Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion. Section 1692g(a) also does not have an additional materiality requirement, express or implied. Congress instructed debt collectors to disclose this information to consumers, period, so these validation notices violated § 1692g(a)... In enacting § 1692g(a)(2), Congress determined that a debt collector must include in its § 1692g(a) notice "the name of the creditor to whom the debt is owed." With that specific disclosure requirement, Congress decided that the failure to make the disclosure is a failure the Act is meant to penalize. The undisputed facts show such a failure here. Since § 1692g(a)(2) clearly requires the disclosure, we decline to offer debt collectors a free pass to violate that provision on the theory that the disclosure Congress required is not important enough. There is also no need for individual inquiry about the materiality to any given recipient."

Under *Spokeo*, a plaintiff in an FDCPA case need not allege any additional harm beyond the one Congress has identified, in fact the violation of the FDCPA alleged in this case is the actual harm and deception anonymous messages concretely cause.

Since appearing before the Court for the pre motion conference, the Second Circuit addressed the *Spokeo* issue of jurisdiction as follows in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016).

> "[W]e understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a "risk of real harm" to that concrete interest...[W]here Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient "risk of real harm" to the underlying interest to establish concrete injury without "need [to] allege any additional harm beyond the one Congress has identified."

6

Since, the particular alleged violation, in this case, was already found to be "misleading" by many courts (as will be discussed below), Plaintiff has "demonstrated a sufficient 'risk of real harm' to the underlying FDCPA interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.

Furthermore, Judge Bianco in *Bautz v. Ars Nat'l Servs.*, No. 16-CV-768 (JFB) (SIL), 2016 U.S. Dist. LEXIS 178208 (E.D.N.Y. Dec. 23, 2016) just decided that a similar violation of the FDCPA wherein the Court analyzed certain language which provided tax consequences for accepting a settlement of debt and where there was no allegation that the debtor relied upon this information as follows:

Defendant now moves to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of standing. Because the Court concludes that plaintiff has sufficiently alleged (1) a substantive violation of the FDCPA that demonstrates a concrete and particularized injury-in-fact; or, alternatively, (2) a procedural violation of the FDCPA that poses a "risk of real harm" to plaintiff's statutory interests, *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016) (citing *Spokeo Inc. v. Robins*, U.S. , 136 S. Ct. 1540, 1549 (2016)), defendant's motion is denied.

Plaintiff alleges that defendant violated Section 1692e of the FDCPA by including a "false, deceptive, or misleading representation" in a letter to her concerning the collection of outstanding credit card debt, and the Court previously determined that plaintiff had plausibly stated a claim that the representation at issue was materially misleading to the least sophisticated consumer. The Court now holds, consistent with Supreme Court and Second Circuit precedent, that adequately alleging a "false, deceptive, or misleading representation" under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices. The Supreme Court's decision in *Spokeo*, as well as the Second Circuit's decision in *Strubel*, do not suggest otherwise; rather, both cases addressed alleged *procedural* violations of statutes, which do not automatically confer standing absent a concrete harm that satisfies the injury-in-fact requirement of Article III. In contrast, here, the claim involves an alleged materially false and misleading statement that is a *substantive* violation of Section 1692e, and confers standing upon the plaintiff without running afoul of the guidance in *Spokeo* and *Strubel*. In any event, even assuming *arguendo* that plaintiff's alleged Section 1692e claim could somehow be considered to be a procedural, rather than substantive, violation of the FDCPA, the Court holds that plaintiff still has standing, under *Spokeo* and *Strubel*, because, as to the particular alleged violation in this case, she has "demonstrate[d] a sufficient 'risk of real harm' to the underlying [statutory] interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (brackets omitted) (quoting *Spokeo*, 136 S. Ct. at 1549). The Court emphasizes that its analysis is limited to this claim under Section 1692e of the FDCPA, and it offers no view on whether other provisions of the FDCPA confer substantive rights.

The Eleventh Circuit addressed this identical issue of Article III standing post *Spokeo* - for a violation of the FDCPA which consisted of not including the same 1692e(11) disclosures in its

communications as required by the FDCPA. - *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016).

The *Church* case is a directly on point post-*Spokeo* opinion which addresses the standing "injury-in-fact" requirement under the Fair Debt Collection Practices Act (FDCPA). The Eleventh Circuit thoroughly reviewed *Spokeo* and cited to *Havens* for the rule that "[a]n injury-in-fact, as required by Article III, 'may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing . . . .'" *Church*, 2016 WL 3611543, at *3 (citing *Havens*, 455 U.S. at 373).

The Eleventh Circuit also briefly addressed the interplay of substantive versus procedural rights in *Church*. The Eleventh Circuit stated that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Church*, 2016 WL 3611543, at *3

"The [FDCPA] requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. See 15 U.S.C. § 1692e(11); 1692g(a)(1)–(5).1 The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. See 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person . . . .")". *Church*, 2016 WL 3611543, at *3.

The Eleventh Circuit further noted that the statement in *Spokeo* concerning "bare procedural violations" was not applicable to the allegations at hand [in *Church*], because Congress provided the plaintiff with a "substantive right to receive certain disclosures" and plaintiff [in Church] alleged that defendant violated that substantive right. Similarly, in the case *sub judice*, Congress has provided the same right to Plaintiff to receive the required disclosures in communications governed by the FDCPA.

8

Thus, the plaintiff has sufficiently alleged that he has sustained a concrete—i.e., "real"—injury because she did not receive the allegedly required disclosures.  The invasion of plaintiff's right to receive the disclosures was not hypothetical or uncertain; plaintiff did not receive information to which she was entitled.  This injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA.  Accordingly, plaintiff has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

In the case at bar, the plaintiff has alleged that the defendant created material harm to the plaintiff by leaving a message which failed to identify the caller as a debt collector. This predatory collection practice causes a concrete and particularized injury.   In fact, in addition, this is a procedural violation which causes a "real risk of harm."

A message left by a debt collector which does not state that it pertains to a financial matter could reasonably pertain to a host of issues - including family or medical matters - which are viewed by most consumers as much more pressing, than a debt owed. One main purpose of these messages is to be vague enough to provoke the recipient to return the calls in haste. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent. *Leyse v. Corporate Collection Servs.*, (2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006).

Failure to adhere to the 1692e(11) procedural "debt collector" disclosure rule does in and of itself manifest real concrete injury since Congress conferred this procedural right to protect plaintiffs' concrete interest in being free from abusive anonymous phone calls and this specific procedural violation presents a "risk of real harm" to that concrete interest. See *Kagan v. Selene Fin. L.P.*, No. 15-CV-5936 (KMK), 2016 U.S. Dist. LEXIS 134482, at *28 (S.D.N.Y. Sep. 28, 2016)

9

> "1692e(11) requires that a debt collector identify itself as such in all communications to enable consumers to know they are, in fact, in contact with a debt collector so they can choose to respond to a letter or voicemail message. Where, as here, the debt collector failed to divulge that precise information, such an omission is material to whether an unsophisticated consumer would be confused about whether the caller was a debt collector."

GC Services' motion must fail in light of the Second Circuit's holding in *Strubel* and the following cases where GC Services has already lost in its countrywide motion practice alleging the same injury in fact challenges. See *Horowitz v. GC Servs. Ltd. P'ship, No.* 14cv2512-MMA RBB, 2016 U.S. Dist. LEXIS 172359 (S.D. Cal. Dec. 12, 2016); *Macy v. GC Servs. Ltd. P'ship,* No. 3:15-CV-819-DJH, 2016 U.S. Dist. LEXIS 134421, 2016 WL 5661525, at *3 (W.D. Ky. Sept. 29, 2016); *Dickens v. GC Servs. Ltd. P'ship,* 2016 U.S. Dist. LEXIS 94621, 2016 WL 3917530 at *2 (M.D. Fla. July 20, 2016).

GC Services has already made the same arguments in these aforementioned cases - that the allegations alleged fail to satisfy Article III - GC Services lost this argument in every one of those cases. As such, GC Services is collaterally estopped from rearguing the issue. *Gomez v. Resurgent Capital Servs., LP,* 129 F. Supp. 3d 147, 156 n.6 (S.D.N.Y. 2015) ("[The debt collector] litigated the issue [in the past] and lost.  As such, [The debt collector] is collaterally estopped from rearguing the issue. District courts in the Second Circuit are [even] permitted to raise the issue of collateral estoppel *sua sponte.*")

In *Horowitz v. GC Servs. Ltd. P'ship, No.* 14cv2512-MMA RBB, 2016 U.S. Dist. LEXIS 172359 (S.D. Cal. Dec. 12, 2016) GC Services made the identical standing argument in which it challenged the injury in fact standing for claims that anonymous phone messages just like the ones left in this case violate the FDCPA; GC Services lost on this identical issue. GC Services is collaterally estopped from rearguing the issue.

> Because Plaintiff Horowitz alleges claims based on alleged omissions in GCS's voicemail message ... Horowitz has sufficiently demonstrated constitutional standing to bring all of the causes of action he asserts—those provided for by the FDCPA...

Under *Tourgeman*, Plaintiff Hamby undoubtedly has constitutional standing to allege violations of the FDCPA based on Defendant's alleged failure to disclose both the name of the collection agency and that the caller was attempting to collect a debt, and for using allegedly deceptive means in an attempt to collect an alleged debt. However, the Court must consider the effects of the Supreme Court's subsequent decision in *Spokeo*. The Court concludes that the *Spokeo* decision has limited instructive value in this case, and is not at odds with *Tourgeman* for the following reasons. Significantly, the *Spokeo* decision addressed the FCRA, and not the statute at issue here, the FDCPA. Further, the *Spokeo* majority opinion does not actually resolve whether the plaintiff in that [*20] case alleged a sufficiently concrete injury, but instead remanded the case to the Ninth Circuit for its determination. *Spokeo*, 136 S.Ct. at 1544 ("This Court takes no position on the correctness of the Ninth Circuit's ultimate conclusion [that the plaintiff sufficiently alleged Article III standing].").

Also, as the Court interprets *Spokeo*, the Supreme Court did not purport to alter the law regarding standing, but rather to reiterate and clarify it, as evidenced by the Supreme Court's citation to its prior opinions regarding standing. *See id.* at 1550 (citing two previous Supreme Court decisions for the proposition that deprivation of a procedural right without harm to some concrete interest is insufficient to confer Article III standing). In other words, it is not a new requirement that a plaintiff must demonstrate a concrete injury in the context of an alleged statutory violation; what *Spokeo* clarified is that sometimes a procedural violation of a statute constitutes a concrete injury, and sometimes it does not. *See id.* at 1549 ("[T]he violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm [*21] beyond the one Congress has identified."). Unfortunately, the *Spokeo* Court only concluded that a procedural violation of the FCRA is insufficient, and was understandably silent as to procedural violations of other statutes not at issue in that case, such as the FDCPA. Accordingly, *Spokeo* does not affect the Ninth Circuit's conclusion in *Tourgeman* that the plaintiff's assertion of procedural violations of the FDCPA amounted to a concrete injury. In *Tourgeman*, the Ninth Circuit framed the plaintiff's asserted injury in broad terms as "the violation of [the plaintiff's] right not to be the target of misleading debt collection communications." *Tourgeman*, 755 F.3d at 1116. Plaintiff Hamby—being similarly situated to the *Tourgeman* plaintiff, as alleged debtors and the targets of debt collectors' communications—clearly enjoys the same right, which he alleges was violated.

It is also noteworthy that, even assuming *Spokeo* overruled *Tourgeman*, *Spokeo* stated that even a risk of real harm caused by a procedural violation may constitute a concrete injury. In line with *Spokeo*, in enacting the FDCPA, Congress plainly sought to implement procedures that would decrease the risk that debt collectors would use deceptive means [*22] in attempting to collect debts and, similarly, decrease the risk that consumers would be so deceived, putting them in positions whereby they are unable to make fair decisions regarding how to respond to communications from debt collectors. *See Tourgeman*, 755 F.3d at 1121 ("By ensuring that consumers are fully and truthfully apprised of the facts and of their rights, the FDCPA enables them 'to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process.'"); *see also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) ("[T]he FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors[.]"). Here, Plaintiff Hamby was the target of Defendant's debt collection efforts, which Plaintiffs contend were misleading and/or otherwise violated the FDCPA...

Plaintiff Hamby, as the alleged debtor, has standing to assert a violation of this provision. Defendant's only other argument as to why it is entitled to summary judgment as to Plaintiff Hamby's claim under section 1692e(11) is that Plaintiff Hamby does not have constitutional standing, but the Court rejects that argument, as discussed above.

11

The court in *Girdler v. Convergent Outsourcing, Inc.*, Civil Action No. 15-cv-13359-DJC, 2016 U.S. Dist. LEXIS 179834, at *5-9 (D. Mass. Dec. 29, 2016) rejected the same standing challenge to anonymous messages that are in violation of the FDCPA.

The Second Circuit, in concluding that plaintiff had standing to bring certain claims for violations of the Truth in Lending Act for failure to disclose particular consumer rights, summarized the holding in *Spokeo*: "we understand *Spokeo*, and the cases cited therein, to instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest."  See id. at 190 (quoting *Spokeo*, 136 S. Ct. at 1549). "But even where Congress has accorded procedural rights to protect a concrete interest, [*6] a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." Id. (citing *Spokeo*, 136 S. Ct. at 1549).

Based upon the record before the Court, Girdler has met her burden as to Count I "to proffer evidence sufficient to manifest" a concrete and particularized injury.  See id. at 192 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). According to the FDCPA, a debt collector must disclose in the initial communication with the consumer that it is a debt collector "attempting to collect a debt and that any information obtained will be used for that purpose."  See *Kagan v. Selene Fin. L.P.*, No. 15-cv-5936-KMK, 2016 U.S. Dist. LEXIS 134482, 2016 WL 5660255, at *7 & n.7 (S.D.N.Y. Sept. 28, 2016) (quoting § 1692e(11)). Debt collectors must also disclose in all subsequent communications with the consumer that the communication is from a debt collector. See id.  This disclosure requirement is contingent upon the debt collector affirmatively identifying the debtor as the one being contacted. See §§ 1692b(2), 1692c(b). Here, a reasonable jury could find that, based upon the uncontested transcripts of the applicable telephone calls, D. 22-1 at 2-3, *Convergent* used "false, deceptive, or misleading representation[s] or means" in failing to disclose to *Girdler* that it was a debt collector [*7] attempting to collect a debt and that the information obtained would be used for that purpose, see § 1692e. A jury could find that *Convergent* first communicated with *Girdler* by phone on June 23, 2015 and confirmed that they had indeed contacted *Girdler*, but did not disclose that it was a debt collector attempting to collect a debt or for what purpose any information obtained during the call would be used. See D. 22-1 at 2. Likewise, a jury could find that during *Convergent's* June 25, 2015 phone call, it failed to disclose that it was a debt collector and used improper representations or means in describing the call as a "courtesy call" prior to attempting to confirm *Girdler's* address. See id. at 3.

*Convergent's* purported conduct thus presents a risk of harm to *Girdler's* concrete interest established by the FDCPA to be free of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. That is, such a violation harms *Girdler's* interest to be informed of the identity of the debt collector and the purpose of the call so as to allow her to make fair decisions regarding how to respond.  See *Horowitz v. GC Servs. Ltd. P'ship*, No. 14-cv-2512-MMA-RBB, 2016 U.S. Dist. LEXIS 172359, 2016 WL 7188238, at *7 (S.D. Cal. Dec. 12, 2016) (citations omitted). [*8] As reasoned by the Eleventh Circuit, "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994 (11th Cir. 2016) (per curiam).

In *Church*, the Eleventh Circuit, in affirming the district court's ruling on summary judgment, concluded that where a debt collector's written communication failed to include the disclosures required by §§ 1692e(11) and 1692g(a), *Church* established standing as she had suffered "a concrete—i.e., 'real'—injury because she did not receive the allegedly required disclosures." Id. The Eleventh Circuit explained that: The invasion of *Church's* right to receive the disclosures is not hypothetical or uncertain; *Church* did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often

12

expect, the Supreme Court has made clear an injury need not be tangible to be concrete. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Id. (citing *Spokeo*, 136 S. Ct. at 1549 and *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) (concluding that plaintiff who lost no actual housing opportunity had standing to [*9] bring Fair Housing Act claims where she alleged that the defendant violated her legal right to truthful housing information));   see *Linehan v. Allianceone Receivables Mgmt., Inc.*, No. 15-cv-1012-JCC, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016) (discussing how where "[t]he goal of the FDCPA is to protect consumers from certain harmful practices; it logically follows that those practices would themselves constitute a concrete injury" (citations omitted)).

This Court's conclusion that *Girdler* has established standing as to Count I is consistent with that of other courts which have addressed standing as to a § 1692e claim.  See, e.g., *Horowitz*, 2016 U.S. Dist. LEXIS 172359, 2016 WL 7188238, at *7 (concluding at summary judgment that plaintiff had established standing for violation of § 1692e(11)); *Linehan*, 2016 U.S. Dist. LEXIS 124276, 2016 WL 4765839, at *7-8 (denying motion to dismiss § 1692e(11) for lack of standing and collecting cases); *Quinn v. Specialized Loan Servicing, LLC*, No. 16-cv-2021, 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967, at *4-5 (N.D. Ill. August 11, 2016) (same as to § 1692e(10) & (11)).

Based on essentially the same reasoning in *Horowitz* and *Gridler*, district courts have unanimously have rejected similar challenges to standing based on *Spokeo* in FDCPA cases. *See Saenz v. Buckeye Check Cashing of Illinois,* 2016 U.S. Dist. LEXIS 127784, 2016 WL 5080747, * 2 (N.D. Ill. 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt . . . a cognizable injury. . . . [Plaintiff] was harmed by receiving a deficient and allegedly misleading communication from [Defendant] — a harm defined and made cognizable by the statute, but a concrete harm nonetheless"); *Quinn v. Specialized Loan Servicing, LLC,* 2016 U.S. Dist. LEXIS 107299, 2016 WL 4264967, * 5 (N.D. Ill. 2016) ("[Defendant's] alleged failure to provide [Plaintiffs] with information required under the FDCPA constitutes a sufficiently concrete harm for [*11] purposes of Article III standing").

**PLAINTIFF HAS SUFFICIENTLY ALLEGED (1) A SUBSTANTIVE VIOLATION OF THE FDCPA THAT DEMONSTRATES A CONCRETE AND PARTICULARIZED INJURY-IN-FACT (2) A PROCEDURAL VIOLATION OF THE FDCPA THAT POSES A "RISK OF REAL HARM" TO PLAINTIFF'S STATUTORY INTERESTS.**

Plaintiff alleges that defendant violated Section 1692e(11) of the FDCPA by using a "false, deceptive, or misleading representation" in its calls to her concerning the collection of her outstanding debt. Courts in this district and across the country have previously determined that these identical allegations plausibly state a claim that the representation at issue are materially harmful and misleading to the least sophisticated consumer. *See. Kagan v. Selene Fin. L.P.,* No. 15-CV-5936 (KMK), 2016 U.S. Dist. LEXIS 134482, at *28 (S.D.N.Y. Sep. 28, 2016) ("As noted above, § 1692e(11) requires that a debt collector identify itself as such in all communications to enable consumers to know they are, in fact, in contact with a debt collector so they can choose to respond to a letter or voicemail message. Where, as here, the debt collector failed to divulge that precise information, such an omission is material to whether an unsophisticated consumer would be confused about whether the caller was a debt collector.") *Massey v. On-Site Manager, Inc.,* 285 F.R.D. 239, 248 (E.D.N.Y. 2012) ("Defendant's reliance on cases applying a materiality requirement to FDCPA §1692e claims is misplaced. Those cases address the provisions of FDCPA §1692e that prohibit false representations. In other words, they address the anti-fraud provisions of FDCPA §1692e. Materiality is almost always a required element in proving a fraud. But FDCPA § 1692e also contains other provisions that do not require a showing of materiality. For example, FDCPA §1692e(11) mandates that debt collectors disclose in [all] communications with a consumer that they are attempting to collect a debt. The failure to give the required disclosure is [material and] actionable per se, without any requirement of [proving] materiality.") Smith v. Greystone All. LLC, No. 09-CV-5585, 2011 U.S. Dist. LEXIS 35283,

2011 WL 1303377, at *6 (N.D. Ill. Mar. 29, 2011) ("If a debt collector fails to adequately disclose that it is a debt collector, the [c]ourt cannot see how that omission is anything but material to the question of whether an unsophisticated consumer would be confused about whether the caller was a debt collector."), reconsideration denied, 2011 U.S. Dist. LEXIS 58777, 2011 WL 2160886 (N.D. Ill. May 27, 2011)

The harm in this case is the undisputed fact that the debtor would not know who is calling her. Consumers that received such messages do not know that they are in contact with a debt collector, that in and of itself is the deceptive harm congress sought to prevent.

Section §1692e(11) of the FDCPA requires that a debt collector identify itself as such in all communications. Congress mandated this provision to enable consumers to know they are, in fact, in contact with a debt collector so they can choose to respond to a letter or voicemail message.

Congress with this specific provision has established that failing to identify itself as a debt collector is a deceptive harmful practice. Congress has concluded that this prohibited practice in and of itself is materially deceptive without the need to demonstrate any further deception.

1692e(11) has a specific obligation on the part of the debt collector that obligates the debt collector to do something affirmative i.e. to say this is a call from a debt collector or to state this is a communication from a debt collector. Every other one of the provisions in 1692e bans misrepresentations except 1692e(11) which requires the debt collector do something affirmatively. In essence 1692e(11) is a congressional determination that the statement "this is a call from a debt collector" is material and it must be stated in every communication.

Defendant seems to now suggest that courts should add a new requirement that a consumer prove the material harm that has occurred with each and every anonymous call, essentially defendant would like to gut the requirement that it be done **every** time.

15

Although defendant's motion does not assume the truth of the facts alleged by plaintiff, since Plaintiff, in her complaint, did in fact alleged the material harm that occurred to her through defendant's anonymous calls and although defendant's arguments automatically fail since they do not assume the truth of plaintiff's complaint, still those arguments in and of themselves are ridiculous and fail as a matter of law.

Anonymous telephone messages are harmful and abusive in and of themselves. If Congress wanted a plaintiff to prove an addition harm, this particular provision would have been stated in the context of the rest of provisions of 1692e. i.e. Do not falsely state you are not a debt collector. Don't mislead someone to believe that the call is not from a debt collector, instead 1692e(11) says you need to tell the consumer that a debt collector is calling every time and the failure to disclose that one is a debt collector is itself a materially deceptive and harmful practice that is prohibited by 1692e(11).  *See Warren v. Sessoms & Rogers, P.A.*, [rule] F.3d [rule], 2012 WL 76053 (4th Cir. Jan. 11, 2012). (The lower court's dismissal of the consumer's § 1692e(11) claim for failing to allege a material violation was reversed since the alleged failure to provide the required disclosure did not need to involve any additional false representations to which materiality may apply, but instead involved the omission of a mandatory disclosure which is enough: "The statute expressly prohibits this exact omission by requiring debt collectors to disclose their status in every communication with a consumer. Accordingly, whether a materiality requirement attaches to other violations of § 1692e has no impact on [debtors] allegations that the defendants violated § 1692e(11).") *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248, 2012 U.S. Dist. LEXIS 120181, 2012 WL 3641367 (E.D.N.Y. 2012) *Goodrow v. Friedman & MacFadyen, P.A.*, 2013 U.S. Dist. LEXIS 105395, 84, 2013 WL 3894842 (E.D. Va. July 26, 2013) *Lembach v. Stewart,* 2013 U.S. App. LEXIS 12094, 10-11, 2013 WL 2501752 (4th Cir. Md. June 12,

16

2013) *Penn v. Cumberland,* 883 F. Supp. 2d 581, 589, 2012 U.S. Dist. LEXIS 104565, 2012 WL 3062141 (E.D. Va. 2012) *Stewart v. Bierman,* 859 F. Supp. 2d 754, 763-764, 2012 U.S. Dist. LEXIS 64355, 2012 WL 1655716 (D. Md. 2012)

These disclosure requirements of the FDCPA do not operate in a vacuum.  Rather, each serves to protect a consumer's concrete interest in "eliminating abusive debt collection practices by debt collectors … and to promote consistent State action to protect consumers against debt collection abuses." a core object of the FDCPA.  15 U.S.C. § 1692.

> "The FDCPA directly advances the government's substantial interest in protecting consumers from deceptive and abusive conduct by debt collectors and protection against invasion of privacy. Requiring debt collectors to provide enough information on a message so as not to mislead the recipient about the purpose of the call and preventing debt collectors from disclosing information to third parties directly advances these interests. As discussed above, the restrictions are "narrowly tailored" to serve these interests in light of the fact debt collectors have "several alternative channels of communication available to them." *Koby v. ARS Nat'l Servs.*, No. 09cv0780 JAH (JMA), 2010 U.S. Dist. LEXIS 47205, at *17-18 (S.D. Cal. Mar. 29, 2010)

As Plaintiff stated in her complaint. The United States and Congress have found that:

> [T]his regulation directly advances the governmental interest of preventing abusive or deceptive debt collection practices such as anonymous telephone messages. Congress has specifically declared the prohibited activity of failing to make the necessary disclosures as inherently misleading. "The argument is that prohibiting debt collectors from leaving anonymous messages directly advances the governmental interests because allowing a debt collector to leave such messages could result in consumers being tricked into calling back and being forced to communicate with the debt collector, which could be an abusive practice since some consumers prefer written contact or to have an attorney or other representative engage in discussions with the debt collector on the consumer's behalf."…"Requiring a debt collector to identify itself as such appears to be a direct and narrow method of preventing consumers from being tricked into communicating with debt collectors regarding a debt. Furthermore, debt collectors have several forms of communication available to them in their efforts to collect a debt, including live conversation over the telephone, in person communication, and the mail. The FDCPA is no more extensive than necessary to achieve the asserted governmental interests of preventing abusive or deceptive debt collection practices such as anonymous telephone calls." *Mark v. J.C. Christensen & Assocs.,* 2009 U.S. Dist. LEXIS 67724, 26-27, 2009 WL 2407700 (D. Minn. Aug. 4, 2009).

This court similarly found in *Halberstam v. Glob. Credit & Collection Corp.*, No. 15-cv-5696 (BMC), 2016 U.S. Dist. LEXIS 3567, at *10-11 (E.D.N.Y. Jan. 11, 2016) "[W]hen the third-party asked if he could take a message for the debtor, and [the debt collector] decided, at that point, to leave call back information in order to solicit the debtor into calling him back without the debtor

knowing who he was calling, [the debt collectors] intent is obvious. It seems to strain the plain language and purpose of the statute to conclude that [the debt collector] decision to leave that message was not a communication in connection with the collection of a debt. "The apparent purpose of [the message] was to be vague enough to provoke the recipient to return the calls in haste."

The "real risk of harm" that congress embedded with this disclosure reequipment was discussed as well in Leyse v. Corporate Collection Servs., (2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006)

> "Were this Court to determine that [the debt collectors] Messages did not constitute communications "regarding [Plaintiff's] debt", the Court would be creating an exception to swallow the rule. Under such an exception, debt collectors would be able to abuse and harass consumers with phone calls and other forms of correspondence so long as there is no express mention of the consumers' debts..."A message left by a debt collector which does not state that it pertains to a financial matter could reasonably pertain to a host of issues - including family or medical matters - which may be viewed by a consumer as much more pressing, than a debt owed. The apparent purpose of these messages is to be vague enough to provoke the recipient to return the calls in haste. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent."

As discussed by the cases mentioned above these disclosure procedures found in 1692g and 1692e(11) afford much needed protections by requiring a debt collectors to notify a consumer, of his rights and its identity as a debt collector when attempting to communicate with debtors.

A consumer who does not know who is calling her or is not given notice of her obligations and rights is likely not to satisfy them and, thereby, unwittingly to lose the very rights that the law affords her. For that reason, a debt collectors alleged violation of each notice or disclosure requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in not being the victim of abusive collection practices. *Spokeo, Inc. v. Robins,* 136 S. Ct. at 1549. Having alleged such procedural violations, a debtor is not required to allege "any additional harm" to

demonstrate the concrete injury necessary for standing.[1] *See Strubel v. Comenity Bank*, No. 15-528-cv, 2016 U.S. App. LEXIS 21032, at *17 (2d Cir. Nov. 23, 2016)

> "These disclosure requirements do not operate in a vacuum, the concern identified in *Summers v. Earth Island Institute*, 555 U.S. at 496. Rather, each serves to protect a consumer's concrete interest in "avoid[ing] the uninformed use of credit," a core object of the TILA. 15 U.S.C. § 1601(a). These procedures afford such protection by requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions. A consumer who is not given notice of his obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him. For that reason, a creditor's alleged violation of each notice requirement, by itself, gives rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. Having alleged such procedural violations, Strubel was not required to allege "any additional harm" to demonstrate the concrete injury necessary for standing."

*In re Horizon Healthcare Servs. Data Breach Litig.*, No. 15-2309, 2017 U.S. App. LEXIS 1019, at *23-24 n.24 (3d Cir. Jan. 20, 2017)

> The weight of precedent in our sister circuits is to the same effect. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) (noting that "'technical' violations of the statute ... are precisely what Congress sought to illegalize" and that therefore tangible harm is not required to confer standing); *accord Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 692 (7th Cir. 2015) (observing that the alleged harm suffered by the loss of privacy incurred by a data breach "go[es] far beyond the complaint about a website's publication of inaccurate information" in *Spokeo*); *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 707 (6th Cir. 2009) (holding that bare procedural violations of FCRA are sufficient to confer standing); *accord Galaria v. Nationwide Mut. Ins. Co.*, No. 15-3386/3387, 2016 WL 4728027, at *3 (6th Cir. Sept. 12, 2016) (concluding that a data breach in violation of FCRA causes a concrete injury — at least when there is proof of a substantial risk of harm); *see also Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990, 993 (11th Cir. 2016) (concluding that a health company's failure to provide required disclosures under the Fair Debt Collections Practices Act caused a concrete injury because Congress had created a right and a remedy in the statute); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211-12 (10th Cir. 2006) (holding that a violation of the Fair Debt Collection Practices Act in the form of an unlawful demand for attorney's fees - even where the fees are not actually paid and so no economic injury was inflicted — is a cognizable injury for Article III standing).

Plaintiff does not allege a mere technical or procedural violation of the FDCPA rather she alleges instead the very injury that the FDCPA is intended to prevent. There is thus a *de facto* injury that satisfies the concreteness requirement for Article III standing. This Court should find, consistent with Supreme Court and Second Circuit precedent, that adequately alleging a "false,

---

[1] Although Plaintiff was not required to allege "any additional harm" to demonstrate the concrete injury necessary for standing Plaintiff in her complaint did of course allege additional harms. Plaintiff has sufficiently alleged (1) a substantive violation of the FDCPA that demonstrates a concrete and particularized injury-in-fact (2) a procedural violation of the FDCPA that poses a "risk of real harm" to plaintiff's statutory interests.

deceptive, or misleading representation" under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices i.e. anonymous abusive telephone calls.

The claim in this case involves an alleged materially false and misleading communication that is a *substantive* violation of Section 1692e, and confers standing upon the plaintiff without running afoul of the guidance in *Spokeo* and *Strubel*. In any event, even assuming *arguendo* that plaintiff's alleged Section 1692e claim could somehow be considered to be a procedural, rather than substantive, violation of the FDCPA, plaintiff still has standing, under *Spokeo* and *Strubel*, because, as to the particular alleged violation in this case, she has in her complaint extensively "demonstrate[d] a sufficient 'risk of real harm' to the underlying [statutory] interest to establish concrete injury without 'need to allege any *additional* harm beyond the one Congress has identified.'" *Strubel*, 842 F.3d at 189 (brackets omitted) (quoting *Spokeo*, 136 S. Ct. at 1549).

Plaintiff has sufficiently alleged (1) a substantive violation of the FDCPA that demonstrates a concrete and particularized injury-in-fact (2) a procedural violation of the FDCPA that poses a "risk of real harm" to plaintiff's statutory interests.

## THE MESSAGE LEFT FOR THE PLAINTIFF IS CLEARLY A VIOLATION

We contend, that the issue of liability has been axiomatic for years especially since defendant has avoided citing to any cases concerning the merits.  Concerning defendant's efforts to move to dismiss FDCPA claims based upon *Spokeo*, Plaintiff's complaint extensively addressed these article III harms yet defendant has failed to assume the truth of the facts alleged in the complaint.  *See Khaytin v. Stern & Stern, ESQS.*, 2013 U.S. Dist. LEXIS 144091, 12, 2013 WL 5520000 (E.D.N.Y. Sept. 30, 2013) ("Defendant's application for permission to file the proposed

<u>motion to dismiss is denied</u> … Although Defendant's proposed motion purports to be a motion to dismiss pursuant to Rule 12(b)(6), it is actually in the nature of a motion for summary judgment. **Defendant's proposed motion does not assume the truth of the facts alleged by Plaintiff"**) (Emphasis added.) *Woolcott v. Baratta,* 2014 U.S. Dist. LEXIS 63043, 17, 2014 WL 1814130 (E.D.N.Y. May 7, 2014) ("Defendants' motion to dismiss presents a factual dispute that is "not appropriately decided at the dismissal stage"); *Martin v. City of New York,* 2013 U.S. Dist. LEXIS 129730, 2, 2013 WL 4899290 (E.D.N.Y. Sept. 9, 2013) (Townes, S.) ("Since there appears to be no meritorious basis for moving for summary judgment, defendants' request for permission to file a motion is denied")

Most importantly, defendant's motion should be denied based upon collateral estoppel.  On July 20, 2016 this very defendant's firm on behalf of this defendant lost on the same argument it now seeks to make here. *Dickens v. Gc Servs*., 2016 U.S. Dist. LEXIS 94621 (U.S.D.C Mid.Div. Fl. Tampa Div. July 20, 2016).

The Court in *Dickens* already treated the *Spokeo* issue for the defendant as follows:

"GC Services' argument suffers from two significant flaws. First, it grossly misreads *Spokeo*. In that case, the plaintiff alleged a violation of the Fair Credit Reporting Act (FCRA) but did not plead any actual harm, and the Court remanded the case to the United States Court of Appeals for the Ninth Circuit because that court had failed to evaluate the two prongs of the Constitution's injury-in-fact requirement: particularity and concreteness. 136 S. Ct. at 1545.  The Ninth Circuit, in holding that the plaintiff had standing, concluded only that the plaintiff adequately alleged a violation of his individual statutory rights, without evaluating whether that injury—i.e. the particularized FCRA violation—was concrete. Id. (emphasis in original). The Court merely held that "[t]his analysis was incomplete." Id. It took "no position as to whether the Ninth Circuit's ultimate conclusion—that [the plaintiff] [4] adequately alleged an injury in fact—was correct." Id. at 1550.

This holding is a far cry from the one GC Services' advances.  In fact, before remanding the case, the Court reaffirmed three important principles of its standing jurisprudence: first, that "concrete" is not synonymous with tangible, id. at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009); second, "that Congress may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law,'" id. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); and third, that the risk of harm alone can satisfy the requirement of concreteness, id. (citing *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).  On these principles, "an alleged failure to comply with a federal law," as CG Services describes Dickens's complaint, may indeed be enough to confer standing.  *Spokeo* in no way stands for the proposition that it is not.

The second flaw in CG Services' argument is that it takes no account of *Church v. Accretive Health, Inc.*, ___F. App'x.___, 2016 U.S. App. LEXIS 12414, 2016 WL 3611543 (11th Cir. July 6, 2016), a more recent decision from the Eleventh Circuit, a decision that, citing *Spokeo*, found that standing existed in a case nearly identical to this one. In that case, the allegation was the same one *Dickens* makes here: that the defendant debt collector did not include in its correspondence with the [5] plaintiff certain disclosures required by the FDCPA. 2016 U.S. App. LEXIS 12414, [WL] at *1. Noting that standing is a jurisdictional threshold courts must evaluate, the court first found that Congress, through the FDCPA, entitled the plaintiff to certain information, and thus an alleged invasion of this right is not hypothetical or uncertain. 2016 U.S. App. LEXIS 12414, [WL] at 3. It may not result in tangible economic or physical harm, the court noted, but neither does constitutional standing. Id. (citing *Spokeo*, 136 S. Ct. at 1549). When the plaintiff alleged that the defendant failed to provide information she was entitled to receive, the Court concluded, she alleged a congressionally elevated cognizable injury. Id. She alleged, in other words, a concrete injury.

Though unpublished, this Court is convinced that the Eleventh Circuit's Church opinion is a more nuanced application of *Spokeo* and the principles underlying it. It is also directly on point. In the face of that persuasive authority, the Court will not read *Spokeo* as denying *Dickens* standing here. As the plaintiff did in *Church*, *Dickens* adequately alleged an injury in fact. He has standing and the Court has jurisdiction."

As set forth above, concerning the merits, the issue of leaving messages has been well established by a plethora of case-law within the district courts in this Circuit as well as the following cases where GC Services has already lost on the issue. See *Chatman v. GC Servs., LP*, 57 F. Supp. 3d 560, 569 (D.S.C. 2014) ("In sum, the court rejects GC's arguments that the messages left on *Chatman's* voicemail were not communications under the FDCPA. It follows that *Chatman* is entitled to summary judgment on liability on her claim for violation of 15 U.S.C. § 1692e(11), because the messages did not indicate that the caller was a debt collector."); *Wood v. GC Servs., L.P.*, 2012 WL 995207 (M.D. Fla. Mar 23, 2012). ("The debt collector's message on plaintiff's answering machine which did not indicate that the call was from a debt collector violated § 1692e(11). Meaningful disclosure" under § 1692d(6) not provided where caller did not leave her name, the debt collection company's name, or the nature of the debt collector's business .); *Elliott v. GC Servs., L.P.*, 2011 WL 5975671 (M.D. Fla. Nov. 28, 2011). (The defendant was denied summary judgment on the §§ 1692d(6) and 1692e(11) claims as to whether the defendant meaningfully disclosed its name or identity as a debt collector in its communications in both telephone calls and voicemail messages.)

22

Regardless what medium the debt collector uses to solicit the conveyance of any anonymous message to the debtor (i.e. answering machine message, third party, postcard, door hanger, dialer system, etc.), it is the *anonymous message* that is without exception or defense, in violation of the FDCPA.  If the debt collector leaves a message without the disclosures, whether a debt collector solicits a return call by leaving a message on a voice-mail system, or if he or she solicits a return call by asking a third party to convey a message to the debtor, that message must not be anonymous and it must comply with the FDCPA.  It is not the method by which the debt collector leaves a message (i.e. phone calls, messages left on an answering machine or voice mail, post card, or letters) which make the message or communication a violation of the FDCPA, rather it is the message itself which is the violation.  A communication is in violation of the FDCPA if it lacks the required 1692e (11) disclosures regardless of the method used to deliver that communication. The FDCPA requires debt collectors identify themselves as such in all messages to prevent consumers from being tricked into communicating with debt collectors regarding a debt[2].

The FDCPA defines "communication" as the "conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a (2). In evaluating what constitutes communication under the FDCPA, the vast majority of f ederal courts have consistently interpreted the FDCPA's definition of communication broadly, and in an expansive manner[3]. "[T]he plain language of the definition of 'communication' is extremely broad, thus

---

[2] *Mark v. J.C. Christensen & Assocs.*, 2009 U.S. Dist. LEXIS 67724, 26-27,2009 WL 2407700 (D. Minn. Aug. 4, 2009).
[3] See *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 655, 2006 U.S. Dist. LEXIS 13857, *24-25 (S.D.N.Y. 2006). (The Second Circuit has suggested that, consistent with Congress's intent in enacting the FDCPA, the statute should be broadly construed. (quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989) ("It is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent 'abusive, deceptive, and unfair debt collection practices.'") (citations omitted) (holding that under the pre-amended version of § 1692e(11), disclosure is required in all communications)); *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1351 (11th Cir. 2009). (stating that this Circuit interprets "communication" broadly; even though

encompassing a wide range of acts. Any medium can be used to classify as a communication, and it includes all information regarding a debt.[4] Thus, the logical interpretation of what constitutes communication includes relaying a phone number for the purposes of having the call returned to discuss a debt." (Emphasis added). *Stinson v. Asset Acceptance, LLC*, 2006 U.S. Dist. LEXIS 42266, *7 (E.D. Va. June 12, 2006)

The case law on 1692e(11) violations have mainly evaluated these questions in the context of anonymous telephone messages seeking a return call.[5] Particularly important in evaluating whether anonymous telephone messages messages are "communications" under the FDCPA, most courts have focused on the obvious purpose of the message which was to provide the debtor with enough information to entice a return call.[6]

---

there was no specific demand for payment, voicemails were still a communication under § 1692e(11)); See also, *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3rd Cir. 2006). ("The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." *15 U.S.C. § 1692a(2)*. The statute does not define "information." "Information" is construed "so as to effect [the FDCPA's] purpose."); See also, *Ramirez v. Apex Financial Management, LLC*, 567 F. Supp. 2d 1035, 1041 (N.D. Ill. 2008.). (Finding that the message was an indirect communication regarding the Plaintiff's debt where it conveyed pertinent information including the fact that there was a matter he should attend to and instructions on how to do so.)

[4] *Leyse v. Corporate Collection Servs.*, 2006 U.S. Dist. LEXIS 67719 quoting *West v. Nationwide Credit, Inc.*, 998 F. Supp. 642 (W.D.N.C.1998.). (Finding that a phone call to a debtor's neighbor that the Defendant had a "very important" matter to address was "regarding a debt" because the content of the phone call was "with respect to" the Defendant's efforts to collect on Plaintiff's alleged arrearage.)

[5] *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 654(S.D.N.Y. 2006). (holding that a debt collector's voicemail messages were communications under the FDCPA and that a narrowing construction of the FDCPA term "communication" would be at odds with the plain language defining that term; furthermore, exempting. such voicemail messages from the definition of "communication" would undermine the purpose of section 1692e(11)); See also, *Nicholas v. CMRE Financial Servs., Inc*., No. 08-cv-4857, 2010 U.S. Dist. LEXIS 25373 at *8-12 (D.N.J. March 16, 2010) at *9 (quoting *Foti*, 424 F. Supp. 2d at 657); see also *Inman v. NCO Fin. Sys.*, No. 08-cv-5866, 2009 U.S. Dist. LEXIS 98215 at *8-9 (E.D. Pa. Oct. 21, 2009). ("This Court finds the *Foti* decision to be highly instructive, and therefore adopts its reasoning."); *Wideman v. Monterey Fin. Servs.*, No. 08-1331, 2009 U.S. Dist. LEXIS 38824 at *5-6 (W.D. Pa. May 7, 2009)(" Indeed, the majority of courts that have addressed the issue have found that messages left with third parties like the one left with *Wideman's* administrative assistant were communications under the FDCPA." citing, among other authorities, *Foti*.)

[6] See, e.g. *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 655-656, 2006 U.S. Dist. LEXIS 13857, *27 (S.D.N.Y. 2006). ("Defendant's voicemail message, while devoid of any specific information about any particular debt, clearly provided some information, even if indirectly, to the intended recipient of the message. Specifically, the message advised the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter. Given that the obvious purpose of the message was to provide the debtor with enough information to entice a return call, it is difficult to imagine how the voicemail message is not a communication under the FDCPA."); *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp. 2d 1346, 1350-5l (N.D. Ga. 2008) (finding that a voicemail instructing the listener to return the call in order to discuss an" important matter" indirectly conveyed information about the debt), *aff'd on other grounds, 584* F.3d 1350 (11th Cir. 2009); *Berg v. Merchs. Ass'n Collection Div.*, 586 F. Supp 2d 1336, 1340-41

Anonymous telephone messages mislead consumers into thinking that the message could reasonably pertain to a host of issues - including family or medical matters - which may be viewed by consumers, as much more pressing than a debt owed.   The apparent purpose of these intimidating messages is to be vague enough to provoke the recipient to return the calls in haste.[7] Leaving a message that deceptively entices a consumer to communicate with a debt collector when he or she is caught off guard is precisely the kind of abuse the FDCPA intended to prevent,  *Leyse v. Corporate Collection Servs.*, (2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006).[8]

## CONCLUSION

Wherefore, defendant's motion should be denied in its entirety.

---

(S.D. Fla 2008) ("Courts have generally considered voicemail messages from debt collectors to be 'communications,' even if the messages do not state what the calls were regarding"); *Belin v. Litton Loan Servicing*, No. 8:06-cv-760-T-EAI, 2006 WL 1992410, at *4-5 (M.D. Fla July 14, 2006) (finding that voicemail messages left on a consumer's answering machine qualified as "communications" regarding the debt for § 1692e(11) purposes despite not directly divulging information regarding the debt; any information shared, the purpose of which was to induce a return communication by the consumer, was enough to qualify the voicemails as communications under the FDCPA); *Foti*, 424 F. Supp. 2d at 654-59 (in finding a voicemail was communication under the FDCPA, court considered content of the message, including the suggestion that there was a matter requiring the consumer's attention, the "obvious purpose" of the message to entice a return call, and the broad purpose of the FDCPA to protect consumer.); *Leyse v. Corporate Collections Servs., Inc.*, 2006 U.S. Dist. LEXIS 67719, 2006 WL 2708451, at *6 (S.D.N.Y. September 18, 2006) (pre-recorded messages, leaving a name and number to call regarding an "important matter," constitute communications within the meaning of the FDCPA.)

[7] *Foti v. NCO Fin. Sys.*, 424 F.Supp.2d 643, 655–56 (S.D.N.Y.2006). (holding that a message with enough information to entice a return call being left with a third party or on a voice mail are "communications" under the FDCPA.); See also *Dona v. Midland Credit Mgmt., Inc.*, No. 10 CV 825, 2011 U.S. Dist. LEXIS 27136, 2011 WL 941204, at *1 (E.D.N.Y. Feb. 10, 2011). (stating that "communications under the [FDCPA] include telephone calls and messages left."); *Wideman v. Monterey Fin. Servs., Inc.* 2009 WL 1292830 (W.D. Pa. May 7, 2009 (Finding that the messages left by the Defendant constituted "communications" even though they did not technically mention any information about the debt and stated a claim under 15 U.S.C. § 1692c(b) since it was not left for the purpose of obtaining location information which is the only permissible communication with third parties under the FDCPA, quoting *West v. Nationwide Credit, Inc.*, 998 F. Supp. 642, 644-45 (W.D.N.C. 1998); also quoting *Belin v. Litton Loan Servicing, LP*, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410 at *4 (M.D. Fla. July 14, 2006))

[8] See *Belin v. Litton Loan Servicing, LP*, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410 at *4 (M.D. Fla. July 14, 2006.). (Finding that the message was a communication under the FDCPA even though it was not disclosed that it came from a debt collector where the name of the company was referenced, directions to return the call were given, and the purpose of the message was to induce the debtor to return the call.)

Dated: Woodmere, New York
       January 23, 2017

Respectfully submitted,


_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
  Attorney At Law
   **Attorney for the Plaintiff**
     735 Central Avenue
      Woodmere, New York 11598
       Telephone: (516) 668-6945
        Email: fishbeinadamj@gmail.com